UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
KENDRA McDOWALL, *on behalf of herself and*
*all others similarly situated*,                                                      **MEMORANDUM**
                                                                                                        **AND ORDER**

                                                    Plaintiffs,                         03-CV-419
                                                                                                (KAM)

            -against-

MICHAEL R. COGAN, et al.,
                                                    Defendants.
-----------------------------------------------------------------X
**KIYO A. MATSUMOTO, UNITED STATES MAGISTRATE JUDGE**:

                        On January 27, 2003, plaintiff Kendra McDowall ("plaintiff"), as the named

representative in a class action, commenced this action under the Fair Debt Collection Practices

Act (the "FDCPA"), 15 U.S.C. §§ 1692 *et seq*., against Michael R. Cogan and Rubenstein,

Cogan, Beehler & Quick, P.C. (collectively "defendants"), claiming that a letter dated November

5, 2002, sent by defendants to her and to those similarly situated, violated protections provided

by the FDCPA.  On December 12, 2003, plaintiffs and defendants jointly moved for the

preliminary approval of their proposed class action settlement.  Docket no. 33, Joint Motion for

Settlement.  On April 7, 2004, the Honorable Allyne R. Ross, United States District Judge,

referred the parties' joint motion to Magistrate Judge Roanne L. Mann to conduct any necessary

hearings and issue a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B),

concerning the reasonableness of the proposed settlement and to determine the amount of

attorneys' fees to be awarded.  Docket no. 34, Referral Order.  On July 15, 2004, the undersigned

Magistrate Judge was reassigned to this matter.  Subsequently, upon the consent of all parties,

and by Order of District Judge Ross dated December 15, 2004, this case was reassigned to the

undersigned magistrate judge for all purposes, including the entry of judgment.  Docket no. 45,

Consent to Magistrate Judge Trial.

Upon review and consideration of the pleadings and the entire record before the

Court, and for the reasons set forth below, the Court certifies the plaintiff Class and grants the

parties' joint motion for approval of the class action settlement.  Additionally, plaintiffs'

counsels' fee petition is also granted.


## DISCUSSION

Pursuant to Fed. R. Civ. P. 23(e), a class action cannot be settled without

certification of a class and court approval.  In deciding whether to approve a proposed class

action settlement, the court must determine whether the terms are fair, reasonable and adequate

(Weinberger v. Kendrick, 698 F.2d 61, 73 (2d Cir. 1982), *cert. denied*, 464 U.S.  818 (1983)),

and that it was not a "product of collusion" (D'Amato v. Deutsche Bank, 236 F.3d 78, 85 (2d

Cir. 2001) (citing Joel A. v. Guiliani, 218 F.3d 132, 138 (2d Cir. 2000)).  Where, as here, "a

settlement is negotiated prior to a class certification . . . it is subject to a higher degree of scrutiny

in assessing its fairness."  D'Amato, 236 F.3d at 85.

### A.  Propriety of Class Certification

A court determining whether to approve a class action settlement must first

determine that a class is certifiable under Fed. R. Civ. P. 23 ("Rule 23").  See Amchem Products,

Inc. v. Windsor, 521 U.S. 591, 619-20 (1997); In re Toys "R" Us Antitrust Litigation, 191 F.R.D.

347, 350 (E.D.N.Y. 2000).  In determining the appropriateness of class certification, "the court

may consider the special circumstance of a request for settlement-only class certification and

need not inquire into certain problems that would arise only if the case were to proceed to trial, such as the difficulty of trial management." Toys "R" Us, 191 F.R.D. at 350 (citing Amchem, 521 U.S. at 619-20).

"Although a trial court must conduct a 'rigorous analysis' to ensure that the prerequisites of Rule 23 have been satisfied before certifying a class, 'a motion for class certification is not an occasion for examination of the merits of the case.'" In re Visa Check/Mastermoney Antitrust Litigation, 280 F.3d 124, 134-35 (2d Cir. 2001) (quoting Caridad v. Metro-North Commuter R.R., 191 F.3d 283, 291 (2d. Cir. 1999)). Thus, when determining whether a class action should be certified, the Court should base its determination "solely on the allegations set forth in the complaint, which are accepted as true." Civic Ass'n of the Deaf of New York City, Inc. v. Giuliani, 915 F. Supp. 622, 632 (S.D.N.Y. 1996).

To qualify for certification, a putative class action must meet the four requirements set forth in Rule 23(a):  (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a); In re Visa Check Mastermoney, 280 F.3d at 132. Moreover, a class action may be maintained only if it qualifies under at least one of the categories provided in Rule 23(b), which permits class certification if:

> the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Fed. R. Civ. P. 23(b)(3).  The party seeking to certify a class bears the burden of demonstrating

that the requirements of Rule 23 are satisfied.  See Amchem, 521 U.S. at 614.

*1.  Numerosity*

      Rule 23(a)(1) requires that the class be so numerous that joinder of all members is

impracticable.  Satisfaction of the numerosity requirement does not necessarily require that

joinder is impossible, but only that plaintiff will suffer a litigational hardship or inconvenience if

joinder is required.  See Familienstiftung v. Askin, 178 F.R.D. 405, 409 (S.D.N.Y. 1998)

(observing that "[i]mpracticability does not mean impossibility, but rather difficulty or

inconvenience."); Consolidated Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir.),

*cert. denied,* 515 U.S. 1122 (1995); see also Ansari v. New York Univ., 179 F.R.D. 112, 114

(S.D.N.Y. 1998) ("[g]enerally speaking, courts will find that the 'numerosity' requirement has

been satisfied when the class comprises 40 or more members and will find that it has not been

satisfied when the class comprises 21 or fewer.").

      Here, as indicated by plaintiffs' counsel, "defendants have admitted to

[approximately] 595 consumers receiving a letter substantially similar or materially identical to

the letter at issue." Docket no. 39:  Letter dated 9/28/04 from Bromberg re Motion for

Preliminary Approval of Class Action Settlement ("Preliminary Approval Letter").  Accordingly,

the Court finds that the numerosity requirement is satisfied.

*2.  Commonality*

      Rule 23(a)(2) requires plaintiffs to show that their claims raise issues of law and

fact that are common to the proposed class, (see Robinson v. Metro-North Commuter R.R., 267 F.3d 147, 155 (2d Cir. 2001)), that is, whether the common questions are at the "'core' of the cause of action alleged."  Harrison v. Great Springwaters of America, Inc., No. 96 Civ. 5110, 1997 WL 469996, at *3 (E.D.N.Y. June 18, 1997) (citing Halford v. Goodyear Tire & Rubber Co., 161 F.R.D. 13, 18 (W.D.N.Y. 1995)).  Here, the core issues raised by plaintiffs' complaint relate to the illegality of debt collection notices allegedly sent by defendants to all Class Members.  Courts have found common questions of law or fact sufficient to certify a class in cases where FDCPA plaintiffs have allegedly received similar debt collection notices or "form" letters.  Id. (citing D'Alauro v. GC Services Ltd. Partnership, 168 F.R.D. 451, 456 (E.D.N.Y. 1996)).  Accordingly, the Court finds that plaintiffs' claims meet the commonality requirement of Rule 23(a)(2).

*3. Typicality*

Rule 23(a)(3) requires that "the claims of the class representatives be typical of those of the class."  Fed. R. Civ. P. 23(a)(3).  Typicality concerns whether "each class member's claim arises from the same course of events, and [whether] each class member makes similar legal arguments to prove defendant's liability."  Marisol A. V. Guiliani, 126 F.3d 372, 376 (2d Cir. 1997) (*per curium*) (internal citations omitted).  Here, plaintiffs contend that each class member received "virtually identical form collection letters" from defendant, and that the class members' claims "arise from the same practices of defendants that gave rise to [named Plaintiff] McDowall's claims."  Preliminary Approval Letter at 4.  Because "the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims . . .," (Robidoux v. Celani, 987 F.2d 931, 936-37 (2d Cir. 1993)), the Court finds that the typicality

requirement is satisfied.

*4. Adequacy of Representation*

To satisfy Rule 23(a)(4), the class representative must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). That is, a class representative must "possess the same interest and suffer the same injury as the class members." Amchem, 521 U.S. at 625-26. The adequacy requirement is determined on two grounds: (1) whether class counsel is "qualified, experienced and generally able to conduct the litigation" and (2) whether the class members have interests that are "antagonistic to one another." In re Drexel Burnham Lambert Group, Inc., 960 F.2d 285, 290, 291 (2d Cir. 1992) (internal citations and quotation marks omitted).

With respect to the first ground, plaintiffs' counsel, Brian L. Bromberg, Esq., affirms in his Certification in support of his application for fees that he has relevant experience in consumer fraud and class action litigation. Docket no. 36, exhibit C, sub-exhibit A, Bromberg Certification ¶ 5. Moreover, Mr. Bromberg's Certification reflects that he has settled at least three FDCPA cases since 2001. Id. ¶ 9. Mr. Bromberg's co-counsel, Lance A. Raphael, Esq., affirms that he is the founder of the Consumer Advocacy Center, P.C., which focuses on consumer rights litigation and class actions. Docket no. 33, Ex. 6, Affidavit of Lance A. Raphael in Support of Plaintiff's Motion for Award of Attorney Fees at ¶ 5 ("Raphael Aff."). Moreover, Mr. Raphael lists over two dozen state and federal class actions around country that he is currently or has formerly been "involved in," many of which concern fair debt collection practices. Id. ¶ 8. Accordingly, the Court finds that plaintiffs' counsel are experienced in

-6-

litigating consumer protection actions, and specifically, class action litigation related to the FDCPA, and thus, are qualified, experienced and generally able to conduct the present litigation.

With respect to the second ground, the Court also finds that the class representative's interests are not antagonistic to the interests of the other Class Members.  As plaintiffs' counsel points out, "[a] number of courts that have considered similar FDCPA class actions challenging form collection letters have found named plaintiffs who received versions of the challenged collection letters to be adequate class representatives for purposes of Rule 23(a)(4)." Harrison, No. 93 Civ. 6106, 1997 WL 469996 at *6 (citing Colbert v. Trans Union Corp., 1995 WL 20821 (E.D.Pa. Jan. 12, 1995)).  Moreover, plaintiff Kendra McDowall and the Class Members are seeking identical relief – statutory damages as authorized under the FDCPA. The record does not indicate any unique defenses that defendant may have against Ms. McDowall, or that she is not credible or lacks knowledge about the circumstances giving rise to the instant action.  See Kline v. Wolf, 702 F.2d 400 (2d Cir. 1983) (upholding denial of motion to certify because class representative's testimony contradicted other evidence and was generally not credible).  Thus, Ms. McDowall is an adequate representative of the class for purposes of this settlement.

5. *Predominance and Superiority*

Because plaintiffs claim that the class is maintainable under Rule 23(b)(3) (see Preliminary Approval Letter at 6), plaintiffs must show that common questions "predominate over any questions affecting only individual members" and that a class action is "superior to other available methods for fair and efficient adjudication of the controversy."  Fed. R. Civ. P

23(b)(3).  The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation" and is similar to the typicality requirement of Rule 23(a)(3).  Amchem, 521 U.S. at 521.  As noted above, plaintiffs claim relief under the same legal theory, alleging that they received virtually identical form collection letters from defendants.  As plaintiffs' counsel point out, "cases regarding the legality of standardized documents and practices often result in the predomination of common questions of law or fact and are, therefore, generally appropriate for resolution by class action."  Preliminary Approval Letter at 6 (citing D'Alauro, 168 F.R.D. at 458) (". . . several FDCPA claims have received class certification based upon a defendant's use of standardized forms.") (internal citations omitted).  Here, the common questions of law and fact related to the content of debt collection letters mailed by defendants to the proposed class predominate over individual issues.  Accordingly, the Court finds that plaintiffs have satisfied the predominance prong of Fed. R. Civ. P. 23(b)(3).

        To fully satisfy Rule 23(b)(3), plaintiffs must also show that proceeding as a class action is the superior method to resolve the present controversy.  "Class actions are the superior method for resolving controversies when the main objectives of Rule 23 are served: namely, the efficient resolution of the claims or liabilities of many individuals in a single action, as well as the elimination of repetitious litigation and possibly inconsistent adjudications."  D'Alauro, 168 F.R.D. at 458 (internal citations omitted).  The D'Alauro court also notes that is it "appropriate for the court to consider the inability of the poor or uninformed to enforce their legal rights and the improbability that large numbers of class members would possess the initiative to litigate individually."  Id. (citing Haynes v. Logan Furniture Mart, Inc., 503 F.2d 1161, 1164-65 (7th Cir. 1974)).  This is especially true in the context of consumer protection litigation, where "the

awards in an individual case are usually too small to encourage the lone consumer to file suit." Id. (citing Colbert, 1995 WL 20821, at *3).  Moreover, as noted by plaintiffs' counsel, the language of the FDCPA clearly contemplates class actions as an enforcement mechanism against prohibited debt collection practices.  See 15 U.S.C. § 1692k (a)(2)(B) and (b)(2) (". . .in the case of a class action . . .").

        The Court finds that plaintiffs have satisfied the superiority requirement under Fed. R. Civ. P. 23(b)(3) in light of economic and efficiency concerns, among other reasons.  The issues presented to the Court are straightforward and not unduly complex, and a class action seems to be the best method by which to resolved plaintiffs' identical claims against defendants. Thus, plaintiffs have satisfied both prongs of Fed. R. Civ. P. 23(b)(3).  As discussed above, plaintiffs have also satisfied each prerequisite to class certification under Fed. R. Civ. P. 23 (a). Accordingly, the class of persons who received defendants' letter, and who received the court-approved Notice of Class Action and Proposed Settlement, and who did not opt out of the settlement, is hereby certified for purposes of settlement.

### B.  Fairness and Reasonableness of the Settlement

        In assessing the fairness of a settlement, a court should examine (1) the negotiating process that led up to the settlement, and (2) the substantive terms of the settlement. D'Amato, 236 F.3d at 85 (citations omitted).  In reviewing the procedural fairness of a class settlement, the court must ensure that:

> (i) the settlement is not collusive but was reached after arm's length negotiation; (ii) the proponents have counsel experienced in similar cases; [and] (iii) there has been sufficient discovery to enable counsel to act intelligently.

Ross v. A.H. Robins Co., 700 F. Supp. 682, 683 (S.D.N.Y. 1988).

Specifically, the Second Circuit has identified a non-exhaustive list of factors that should be considered in determining the fairness and reasonableness of a proposed class action settlement:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974) (citations omitted); see also County of Suffolk v. Long Island Lighting Co., 907 F.2d 1296, 1323-24 (2d Cir. 1990) (citing same nine factors).

*1. The Complexity, Expense and Likely Duration of the Litigation*

This Court has considered the complexity, expense and likely duration of the litigation, and concludes that although this litigation does not involve unique or unusual claims, or unduly complex issues, it may take many more months to resolve.  In light of the course of briefing and argument of plaintiffs' unsuccessful motion to strike defendants' offer of judgment pursuant to Fed. R. Civ. P. 68, which delayed the commencement of discovery for nearly six months, as well as the numerous conferences conducted by the Court, it is the Court's determination that this litigation, which was commenced in January 2003, may involve many more months of trial preparation, the trial itself and possible appeal.  Such protracted litigation

may reduce the ultimate recovery and delay the payment of a judgment to the Class Members.

Thus, this Court finds that settlement offers the class members the benefit of immediate payment

as opposed to an uncertain award in the future.

*2. The Reaction of the Class to the Settlement*

Pursuant to this Court's Order dated December 17, 2004, a printed Notice of Class

Action and Proposed Settlement of Class Action (the "Notice"), in form approved by the Court,

was mailed "via First Class mail with 'Forwarding Service Requested' on each envelope, postage

prepaid" to 593 Class Members on January 5, 2005.  Docket no. 47, Ex. A, Affidavit of Michael

Caines, President of First Class, Inc., Claims Administrator, dated February 24, 2005 ("Caines

Aff."); see also docket no. 44, Preliminary Approval Order of Class Action Settlement

("Preliminary Approval Order") ("Notice" annexed as exhibit to Preliminary Approval Order).

The Notice contained a detailed description of the nature and procedural history of this action,

the terms of the proposed Settlement Agreement, the claims that will be released in the

settlement, and Class Counsel's fee and expense application.  The Notice also advised Class

Members of their right to object to the settlement, and/or the fee and expense application, or to

opt out of the Class by no later than February 14, 2005.  The Court also directed that along with

the Notice, potential Class Members be mailed a sample debt collection letter dated November 5,

2002, sent by defendants to plaintiff Kendra McDowall, and purportedly "identical" (Compl. ¶

28) to the letters sent to the other Class Members.

As of February 24, 2005, 101 class Notices were returned to the Claims

Administrator as undeliverable.  See Caines Aff. ¶ 7.  To date, no Class Member has filed a

written objection to the proposed Settlement Agreement.  Moreover, the Court notes that no

Class Member appeared at the Court's Fairness Hearing held before the undersigned magistrate

judge on March 1, 2005.  Only one person opted out of the Class.  See Docket no. 47, Letter

dated February 24, 2005 from Brian Bromberg, Esq. Regarding Class Notice; Caines Aff.  Thus,

491[1] persons constitute the Class for purposes of settlement.  This positive reaction of the Class

Members to the proposed settlement raises a presumption that the terms of the settlement are

indeed favorable.

3.  *Stage of Proceedings and Amount of Discovery*

As stated above, the parties have conducted limited discovery, have briefed and

argued plaintiffs' unsuccessful motion to strike the Rule 68 Offer of Judgment, and have engaged

in negotiations resulting in the proposed settlement.  It appears that plaintiffs have had limited

discovery into defendants' records to ascertain how many persons were mailed a copy of the

letter giving rise to this law suit.  However, there is no indication that the parties have exchanged

document discovery or conducted depositions.

"To approve a proposed settlement, the Court need not find that the parties have

engaged in extensive discovery.  Instead, it is enough for the parties to have engaged in sufficient

investigation of the facts to enable the Court to 'intelligently make . . . an appraisal' of the

Settlement."  In re Austrian & German Bank Holocaust Litigation, 80 F. Supp. 2d 164, 176

---

[1]   593 Class Notices mailed
-     1 opt out
- 101 returned Notices
_____
   491 Class Members

-12-

(S.D.N.Y. 2000) (citing <u>Plummer v. Chemical Bank</u>, 608 F.2d 654 (2d Cir. 1982)).  While it cannot be said that the present litigation has sufficiently advanced to the "stage of pointing or preparing for trial" (<u>In re Sumitomo Copper Litigation</u>, 189 F.R.D. 274, 281 (S.D.N.Y. 1999)), it appears that counsel for both parties understand the issues and have "assessed the strengths and weaknesses of their respective claims, defenses and strategies" (<u>In re Marine Midland Motor Vehicle Leasing Litigation</u>, 155 F.R.D. 416, 420 (W.D.N.Y. 1994)).  Accordingly, the stage of the proceedings, and the amount of the discovery completed, also favor approval of the proposed settlement.

*4.  The Risks of Establishing Liability and Damages*

      In determining the fairness of the proposed settlement, this Court must balance the risks of establishing liability and damages against the benefits afforded by the settlement.  <u>See Grinnell</u>, 495 F.2d at 463.   There is inherently some risk involved in this litigation.  Indeed, there is the possibility that the form collection letter at issue may be found not to violate the FDCPA.  <u>See Wilson v. Quadramed Corp.</u>, 225 F.3d 350 (3d Cir. 2000) (affirming dismissal of FDCPA claim where debt collection letter afforded debtor the opportunity to pay bill "immediately and avoid further action" against him, finding that the letter did not confuse or mislead the "least sophisticated debtor" as to his statutory rights under FDCPA to dispute or seek validation of the debt).  In this regard, the Class may face risks in establishing liability and damages.  Accordingly, the Court finds that the litigation risks are sufficiently high to warrant settlement.

*5.  The Ability of the Defendants to Withstand a Greater Judgment*

      If plaintiffs were to succeed at trial, it is likely that defendants would be able to

satisfy any final judgment against them.  This determination is made in light of the statutory cap placed on damages for a class action under the FDCPA, which limits recovery to the lesser of $500,000 or one percent of the creditor's net worth.  See 15 U.S.C. § 1640(a)(2)(B).   Here, defendants' combined net worth is alleged to be $185,000, the maximum statutory recovery being $1,850.  Under these facts, this factor will not afforded great weight in this Court's determination of reasonableness, because surely defendants would be able to pay this sum, assuming plaintiffs were to succeed at trial.

*6.  Range of Reasonableness of the Settlement Fund to a Possible Recovery in Light of all the Attendant Risks of Litigation*

As noted above, the maximum statutory recovery under the FDCPA in this litigation would be $1,850.  Thus, the proposed class recovery of $10,000, inclusive of administration costs, but excluding attorneys fees and $2,000 to be paid to Ms. McDowall for her central role in this litigation, appears to be well within the "range of reasonableness" contemplated by the Grinnell court.  496 F.2d at 463; see also Cope v. Duggins, 203 F. Supp. 2d 650 (E.D. La. 2002) (proposed settlement of $8,000 was reasonable in a class action against a creditor for violations of FDCPA, notwithstanding the fact that individual recoveries were only $11.90, when the proposed recovery represented over sixty percent of the maximum recoverable amount under the FDCPA, and there were factual and legal obstacles to success on the merits).

Upon consideration of the Grinnel factors, the proposed settlement in the amount of $10,000, inclusive of anticipated notice and distribution costs of $2,194.73, but excluding $2,000 to be paid to Ms. McDowall for her role in this litigation and attorneys' fees, is approved

as fair and reasonable.  Accordingly, each of the 491 remaining Class Member shall receive $15.89[2] to be distributed in accordance with the Court's Preliminary Approval Order.

### C.  Fee Petition of Plaintiffs' Counsel

The law firm of Brian L. Bromberg, P.C. and his co-counsel Lance A. Raphael, Esq. and Stacy M. Bardo, Esq., as Class Counsel for plaintiffs, have filed a joint petition for an award of attorneys' fees in the amount of $14,000, to be paid separately from the class action settlement amount.

As a prerequisite to recovery, counsel must submit contemporaneous time records setting forth the hours spent by each attorney and the nature of the work preformed.  See New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983). "Time records should be sufficiently particular and supported with such information as is necessary to assist the court in determining how much of the claimed fee is reasonable . . ." Gucci America, Inc. v. Rebecca Gold Enterprises, Inc., 802 F. Supp. 1048, 1052 (S.D.N.Y. 1992).  The Court has reviewed the time sheets from plaintiffs' counsel.  They appear detailed and supply sufficient information about the services performed and time expended.

A consumer who prevails[3] in a FDCPA action may recover "the costs of the

---

[2] $10,000.00
- $2,194.73
_____
$7,805.27 ÷ 491 = $15.89

[3]For the purposes of plaintiffs' counsels' fee petition, the Court considers plaintiffs as having prevailed in this action, insofar as they have "obtained . . . settlement giving [them] some of the legal relief sought."  Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health and Human Resources, 532 U.S. 598, 602 (2001) (citations omitted); see also Cooper,

action, together with reasonable attorney's fees as determined by the court." 15 U.S.C. § 1692k

(a)(3).  These expenses should be awarded regardless of whether the consumer received actual or

statutory damages, and the amount should "be fixed in the discretion of the court."  Savino v.

Computer Credit, Inc., 164 F.3d 81, 87 (2d Cir. 1998).  To calculate reasonable attorneys' fees

under the FDCPA, like other fee-shifting statutes, courts utilize the "lodestar" method, whereby

the number of hours reasonably expended is multiplied by a reasonable hourly rate.  See Irish v.

City of New York, Nos. 98 Civ. 7131, 00 Civ. 9614, 2004 WL 444544 (S.D.N.Y. Mar. 10, 2004)

(quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)); see also Luciano v. Olsten Corp., 109

F.3d 111, 115 (2d Cir. 1997).  Moreover, the rate requested should be "in line with those

prevailing in the community for similar services by lawyers of reasonably comparable skill,

experience and reputation."  Luciano, 109 F.3d at 115 (quoting Blum v. Stenson, 465 U.S. 886,

896 n.11 (1984)).  A strong presumption exists that the lodestar figure represents a reasonable

fee.  Kapoor v. Rosenthal, 269 F. Supp. 2d 408 (S.D.N.Y. 2003).

> Plaintiffs' counsels' contemporaneous time records indicate that they collectively
expended 85.40 hours in connection with this case, billing $23,023.50 in legal fees.[4]  However,
the proposed Settlement Agreement provides for a total award of attorneys' fees in the amount of
$14,000 .  See Preliminary Approval Order ¶ 2.  Thus, $14,000 for 85.40 work hours yields an

---

2001 WL 740765, at * 3 (plaintiff, "[h]aving settled for an award of statutory damages, . .  is
unquestionably a prevailing party in this action").

   [4] Brian  Bromberg, Esq.'s hourly billing rate is $290.  Bromberg Certification ¶ 1.  Lance
Raphael, Esq.'s hourly billing rate is $350.  Raphael Aff. ¶ 3.  Stacy Bardo, Esq. failed to submit
an affidavit setting forth her hourly billing rate.

average hourly rate of less than $165 per hour.[5]  Notably, attorneys' fees in similar FDCPA cases

in this district have been at the rate of $200 per hour.  See e.g., Laster v. Cole, No. 99 Civ. 2837,

2000 WL 863463 (E.D.N.Y. June 23, 2000) ($200); see also Cooper v. Sunshine Recoveries,

Inc., No. 00 Civ. 8898, 2001 WL 740765 (S.D.N.Y. June 27, 2001) ($200 per hour for both

Messrs. Bromberg and Raphael).  Thus, $14,000 in attorneys' fees for  85.40 work hours, at an

average billing rate of less than $165 per hour appears to be reasonable.

A "[d]etermination of the lodestar figure does not end the inquiry."  Zervos v.

Verizon New York, Inc., No. 01 Civ. 685, 2002 WL 31553484, at *5  (S.D.N.Y. Nov. 13, 2002).

The lodestar may be adjusted in light of the following non-exclusive list of considerations:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill
> requisite to perform the legal service properly; (4) the preclusion of other employment by
> the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is
> fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8)
> the amount involved and the results obtained; (9) the experience, reputation and ability of
> the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the
> professional relationship with the client; and (12) awards in similar cases.

United States Football League v. National Football League, 887 F.2d 408, 415 (2d Cir. 1989).

"When a party advocates that the lodestar amount be reduced, he or she bears the burden of

establishing that a reduction is justified."  Zervos, 2002 WL 31553484, at *5.  Here, defendant

has not contested plaintiffs' counsels' calculation of their fees nor of the work hours they

expended in litigating this matter.

Although the Court has authority to make an upward or downward adjustment of a

fee award based on any of the above factors, the Court will not to do so here.  Based on a review

---

[5]$14,000 ÷ 85.40 = $163.93 per hour

of the record, the Court finds that factors 3, 5, 6, 8, 9 and 12 weigh in favor of the proposed fee

award, while factors 1 and 2 do not necessarily favor the proposed fee award.[6]  The Court cannot

make a determination as to factors 4, 7, 10 and 11.

---

[6]        With respect to the first factor, if, in fact, the parties had not agreed on $14,000
for attorneys' fees, this Court may likely have reduced plaintiffs' counsels' lodestar by a
significant amount given that the time spent by plaintiffs' counsel in analyzing and reviewing
work which had already been completed by co-counsel, seems excessive, duplicative, and
otherwise unnecessary.  The Court notes that it may "exclude excessive, redundant or otherwise
unnecessary hours . . ."  Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999) (internal
citations omitted).  For example, plaintiffs' counsels' time records reveal that over ten hours
were spent by three attorneys drafting and revising the fourteen page complaint.  While "multiple
attorneys are allowed to recover fees on a case if they show that the work reflects the distinct
contributions of each lawyer" (Kapoor, 269 F. Supp. 2d at 415 (internal citations omitted)), the
Court is not convinced that the amount of time expended with respect to the complaint, is
consistent with Mr. Bromberg's assertion that he "[is] considered one of the most highly
qualified FDCPA class action attorneys in New York State and in the country."  Bromberg Aff.
5-6.
           With respect to the second factor, this Court does not view this case as so
complex as to merit duplicative efforts by plaintiffs' counsel.  The case concerns whether the
content of defendants' letter dated November 5, 2002 violated one or more provisions of the
FDCPA.  See Compl. ¶ 22.  Given that Mr. Bromberg and Mr. Raphael are highly experienced
consumer protection attorneys, the Court is not convinced that three attorneys were needed to
carry out the work that one experienced attorney could have performed.  See also Kapoor 269 F.
Supp. 2d at 414-15 (in similar FDCPA action where Messrs. Bromberg and Raphael served as
plaintiffs' counsel, "the Court f[ound] that the utilization of three attorneys in preparing a
complaint with relatively straightforward issues is duplicative and/or excessive.").
           The Court also notes that it would not likely award plaintiffs' counsel their
requested billing rate of $290 per hour for Mr. Bromberg's services and $350 per hour for Mr.
Raphael's services.  Instead, it would have awarded fees at a rate consistent with the reasonable
hourly billing rate for attorneys handling similar FDCPA cases in this district, as discussed
above.
           Nevertheless, the Court has found plaintiffs' counsels' fees in the amount of
$14,000 to be reasonable given that this amount is below what the Court would calculate as a
lodestar to be used in this case.  Moreover, this amount represents a figure that is significantly
below plaintiffs' counsels' initial fee calculation, as reflected by their contemporaneous time
records.

## CONCLUSION

For the reasons set forth above, the plaintiff Class is certified, the parties' joint motion for the approval of the class action settlement is granted, and the plaintiffs' counsels' fee application in the amount of $14,000 is also granted.  Accordingly, each of the 491 remaining Class Member shall receive a check in the amount of $15.89, to be distributed in accordance with the procedures set forth in the Court's Preliminary Approval Order.  In addition, Ms. McDowall shall receive a check for $2,000 for her central role in this litigation.

The Court hereby directs plaintiffs' counsel to file an affidavit demonstrating that settlement checks have been distributed to Class Members as well as to Ms. McDowall, in accordance with the Court's Preliminary Approval Order.  The Clerk of the Court is hereby directed to close this case upon receipt of plaintiffs' counsels' affidavit demonstrating proper distribution of the settlement checks.

**So Ordered**.

Dated: March 2, 2005
        Brooklyn, New York

_____/s/_____

**Kiyo A. Matsumoto**
United States Magistrate Judge
Eastern District of New York